EMERSON L. STONE, APPELLEE, v. OMAHA FIRE INSURANCE COMPANY, APPELLEE, IMPLEADED WITH W. W. MORSMAN, APPELLANT.

FILED MAY 22, 1901. No. 9,552.

Commissioner's opinion. Department No. 2.

1. Expenses of Procuring Receiver Chargeable Against Fund in Custodia Curiae. The expenses of procuring a receivership of an insolvent corporation, including services of an attorney in consultations, preparing papers and procuring the appointment of a receiver, are properly chargeable against the fund so brought into the court's control.

2. Value of Attorney's Services: ABUSE OF DISCRETION. Where the value of an attorney's services rendered to a receiver is admitted, or clearly established, it is an abuse of discretion of the trial court to order the attorney's claim for such services to be reduced a certain amount below such value on the ground that the corporation is insolvent and the creditors will be compelled to lose a large proportion of their claim, and that the attorney received a large volume of business from one client.

APPEAL from the district court for Douglas county. Heard below before SCOTT, J. Reversed.

W. W. Morsman, for himself.

Lodowick F. Crofoot, Receiver, for himself.

SEDGWICK, C.

The directors of the Omaha Fire Insurance Company, finding that its affairs had become embarrassed and it

could no longer.continue business upon the lines that had been pursued, consulted the appellant, Mr. Morsman, who is a member of the Douglas county bar, as to the condition of the affairs of the corporation and as to the best course to be pursued. After several consultations, in which the affairs of the company seem to have been thoroughly investigated, it was thought best, and the directors were advised by their counsel, to make application to the district court of Douglas county for the appointment of a receiver to take charge of the property and business of the corporation and wind up its affairs. Thereupon the appellant, under the instruction of the directors, began an action in the name of Emerson L. Stone, one of the directors, against the Omaha Fire Insurance Company and procured the appointment of a receiver, who duly qualified as such and took possession of the assets of the company, which were then supposed to be of about the value of $50,000, but were afterwards found to be of somewhat less value. The receiver was continued a little more than a year, when he was discharged by the court upon complaint of one of the creditors, on the ground that he was directly or indirectly personally interested in the assets. No charges of mismanagement or any default were made against the receiver; and indeed the affairs of the receivership, so far as appears from this record, were faithfully and efficiently conducted during his receivership. Upon the discharge of the first receiver, the present receiver, Mr. Crofoot, was appointed by the court. The appellant seems to have acted as sole attorney for the first receiver. The business that came into the hands of the -first receiver was somewhat complicated and occasioned a more than usual demand for the services of an attorney. On the 16th day of February, 1897, near the end of the first year from the time of his employment, the appellant presented to the first receiver an account for specified services, amounting in the aggregate to $935. The receiver presented it to the district court and recommended its al-

lowance. It was soon after that that the receiver was removed and Mr. Crofoot appointed in his place. Two of the creditors filed exceptions to appellant's first claim, in which they specified two items, and object that they were "for services rendered to the plaintiff and other stockholders"; and then say, "While no fault could probably be found with any item in this bill if it stood by itself, we respectfully suggest that since all these services were rendered to one party, and because the assets on hand are very limited, the whole bill ought to be reduced about 30 per cent." The record does not disclose any ruling of the court upon this bill at that time; but the court ordered the new receiver to investigate this claim and report to the court. In accordance with this order the receiver reported, and speaks of the first item of the claim, to wit, "Preparing papers, consultations, and procuring order appointing receiver, $150," as having been already rejected by the court, and, specifying three other items, suggests that a smaller charge would be reasonable, and says that the remaining items of the bill are just and reasonable. The exceptions filed by the two creditors above referred to, and this report of the receiver, appear to have been treated by all parties as constituting an answer to plaintiff's claim, and there was no controversy in regard to any items of the first claim except as to the four items referred to. On the 7th day of May, 1897, the appellant filed a second claim for services rendered or completed after the filing of the first claim. The second claim was for $765; the total amount of both claims being $1,700. There was a hearing had on these claims, and the court disallowed the first item of the first claim, to wit, "February 24th, 1896, preparing papers, consultations, and procuring order appointing receiver, $150," for the reason, as stated in the order, that it was "an improper charge against the receiver, the same being services rendered the corporation," and allowed the appellant on both claims $1,200, and no more. From this order the appellant has appealed to this court.

Was the service of February 24, 1896, preparing papers, consultations, and procuring order appointing receiver, an improper charge against the funds in the hands of the receiver? It seems clear to us that it was not. In *Trustees v. Greenough*, 105 U. S., 527, 532, the court said: "It is a general principle that a trust estate must bear the expenses of its administration. It is also established by sufficient authority, that where one of many parties having a common interest in a trust fund, at his own expense takes proper proceedings to save it from destruction and to restore it to the purp · ses of the trust, he is entitled to reimbursement, either out of the fund itself, or by proportional contribution from those who accept the benefit of his efforts." This doctrine is approved in *Central R. & B. Co. v. Pettus*, 113 U. S., 116, and in other cases. The principle involved has been frequently recognized by this court. *Mathis v. Pitman*, 32 Nebr., 191; *Scebrock v. Fedawa*, 33 Nebr., 413; *Wallace v. Sheldon*, 56 Nebr., 55. When a corporation, by reason of impairment of its capital, is unable longer to carry on its business, and creditors are pressing with judgments and executions, the directors owe a duty to the creditors, stockholders and all persons having an interest in the property, as well as to the corporation itself. If in the discharge of that duty, and being no longer able to hold the property as officers of the corporation, they take such steps as are necessary to invoke the jurisdiction of a court of equity to preserve the property and distribute it to those entitled thereto, we are unable to see why the expense of so doing is not as properly chargeable against the property as are any expenses incurred during the receivership. The directors did the thing that the beneficiaries of the fund needed to have done in order to serve their interests. It is through this action of the directors that the fund is made available to the beneficiaries, and there seems to be no reason why the necessary expenses of this action should not be paid out of the fund. We think this item should have been allowed.

There were three other items of the first claim amounting to $140 that were questioned, and also various items of the second claim. The court, after disposing of the item for preparing papers, etc., above referred to, "finds under the facts and evidence in the case that said W. W. Morsman claims should be reduced by the further amount of $350." There is no direct finding of the value of the services rendered. Indeed, the evidence in the case would not support a finding that the services rendered were of less value than the amount charged. These services were rendered during a little more than a year of the first part of the receivership. It is this period of a receivership that ordinarily makes the most exacting demands upon the efforts of the receiver and his attorney. The services rendered and charged for by appellant are not criticised; there is some attempt to criticise the general results of the conduct of the receivership during this period, but such criticisms are not at all justified by the evidence. The evidence of the appellant himself, which is very clear and convincing, is supported by Mr. Learned, who also covers the whole ground and shows himself to be a competent and candid witness; and by a stipulation of the parties it was agreed that two other well known members of the Omaha bar would testify substantially as Mr. Learned; so that we have the evidence of four witnesses, from which it would appear that the services rendered were of greater value than the amount charged by the appellant. There were also, in behalf of the receiver, four witnesses, all of whom substantially admitted that the services rendered by appellant were "reasonable if standing by themselves." Mr. Haller, who appears to be a candid witness, was put upon the stand by the receiver. The following questions were asked and answers given:

Q. Taking into consideration in answering the questions propounded by me, the fact that the insurance company was insolvent, and that all of the services performed were performed for one client, I will ask you to

state what, in your opinion, was the reasonable value of the services outlined for securing the appointment of the receiver?

A. I would like to ask whether I can make a general statement with reference to all of these questions, to make my position clear?

Q. Yes, I will ask you for a general statement.

A. I looked over the bills, and I would like to state this: If each item of service had been rendered for separate individuals, I don't think there is an overcharge, except the two, and those are the last charges on the second bill.

It is very manifest from the evidence, the conduct of the hearing, the hypothetical questions propounded in behalf of the receiver and the findings of the court that the idea suggested by these questions and answers was the controlling thought that caused appellant's claim to be reduced; that is, the services rendered were of the value charged, but on account of certain considerations, such as that claimant had received a large volume of business from one client and that creditors would not be paid in full, and that the assets had not been more speedily converted into cash, the court, in its discretion, ought to deduct a percentage from claimants charges. So that the question now is, is it within the discretion of the trial court to reduce the claim on such grounds? Assets in the hands of receivers are too often unnecessarily depleted. Receiverships involving large expenses are too frequently protracted for the benefit of officers and attaches, rather than for the benefit of creditors and other owners of the funds; and, as suggested by the appellee in this case, it is the duty of the court to scrutinize such proceedings closely, and prevent, as far as possible, those practices, which too often bring reproach upon the administration of the law. And therefore the law clothes the court with a large discretion in reviewing the expenses incurred by its receivers. In ordinary cases the findings of a trial court upon conflicting evidence are not

to be disturbed unless clearly wrong, and the reason for allowing an ample discretion in dealing with the accounts of a receiver, who is but an arm of the court itself, is very apparent. But in this case, as it appears to us, we are not dealing with a finding of the trial court upon conflicting evidence. If the services of the appellant were of the value charged, and he has made no contract to take a less amount, the question is whether the trial court may in its discretion apply a part of the earnings of appellant to make good the losses of the creditors of the corporation or its stockholders; and to this question there can be but one answer. If an attorney receives a large volume of business from one client, and if the client's business is unprofitable, or he has suffered great losses, such considerations may, and no doubt often do, induce an attorney to agree to render his services for less than their real value. But in the absence of such agreement he can not be compelled to do so.

We are sorry to be obliged to add that there are in appellant's brief some strictures of the trial court which do not appear to be justified by the record; and also criticisms of appellant in the brief of opposing counsel that are unwarranted. They are unfortunate blemishes upon presentations of the case, which are otherwise admirable, furnishing great assistance to us in this difficult investigation.

It is recommended that the order of the trial court be reversed, and the cause remanded with instructions to enter an order allowing appellant's claim as rendered, with interest thereon at seven per cent per annum from the date of the order appealed from, with costs of this appeal taxed to the receiver.

OLDHAM and POUND, CC., concur.

By the Court: For the reasons stated in the foregoing opinion the order of the district court in the above case is reversed, and cause remanded to the district court with instructions to enter an order allowing appellant's claim

as rendered; with interest thereon at the rate of seven per cent per annum from the date of the order appealed from, with the costs of this appeal taxed to the receiver.

REVERSED AND REMANDED.