STATE, EX REL. O. S. SPILLMAN, ATTORNEY GENERAL, V. CITIZENS STATE BANK OF CHADRON, APPELLEE: CROSSMAN, MUNGER & BARTON, INTERVENERS, APPELLANTS.

FILED FEBRUARY 1, 1929. No. 26287.

*Crossman, Munger & Barton, pro se.*

*C. M. Skiles* and *I. D. Beynon, contra.*

Heard before GOSS, C. J., ROSE, DEAN, EBERLY and DAY, JJ., and BEGLEY and RAPER, District Judges.

RAPER, District Judge.

The Citizens State Bank of Chadron in June, 1923, employed the firm of Crossman, Munger & Barton, attorneys, to collect certain securities held by the bank against one Belsky, who owed the bank large sums of money on several notes, a part of said notes being secured by second mortgages on land and personal property and part were un-

secured. The attorneys, pursuant to that employment, secured the dismissal of a foreclosure of the first mortgage, and with the consent of Belsky foreclosed the bank's second mortgage on the land and also the chattel mortgage. In both cases the bank bought the property under the foreclosure sales, subject to the first mortgage on the real estate. The foreclosure sale on the real estate was confirmed on January 26, 1925, and sheriff's deed issued to the bank, and the personal property sold on February 26, 1925, under the foreclosure of the chattel mortgage to the bank. As part of the transaction by which the said Belsky consented to the foreclosures, it was agreed between the bank and Belsky that, if Belsky would assist in facilitating the foreclosures, the bank would give Belsky a lease for a term of years on the land, with option to repurchase the land. The lease had not been executed by the bank to Belsky when the guaranty fund commission took charge on March 9, 1925. The terms of this lease were not familiar to the commission, and their agent wrote to the interveners to inquire about the agreement to be incorporated into the lease. The interveners, on March 31, 1925, wrote to Citizens State Bank, "Attention Mr. J. B. Lacy" (the agent in charge for the commission). This letter recited in a general way the details of the various actions and proceedings in the cases. This letter states in part: "We have completed all matters in connection with the foreclosure of the real estate mortgage upon the ranch and sheriff's deed has been issued to the bank for this property, subject to the $32,000 mortgage of Woods Brothers. We bought in this property in the real estate foreclosure at less than the face of our indebtedness and then proceeded to foreclose the chattel mortgage, so that the title to the ranch and the title to all the personal property and equipment upon the ranch is now in the Citizens State Bank of Chadron. We had just completed this matter a few days prior to the time that the department took over the bank and sent our final bill for services in the amount of $750, which you will find in the files. * * * Inasmuch as

our services have been completed, we wish you would kindly place our bill for services * * * in line for payment." A letter was also written March 30, 1925, by Mr. Lacy, asking for abstracts which interveners had. Another letter was written by interveners on April 8, 1925, giving more in detail the terms of the lease to be executed to Mr. Belsky and which the guaranty fund commission had agreed to make in accordance with the understanding with Belsky at time of the foreclosures. Mr. Lacy, the agent for the commission, later prepared the lease. The sheriff's deed to the property could not be found in the bank, and Mr. Lacy wrote to interveners to send the deed, which was done, and interveners sent to Mr. Lacy a note of $15,000, which they had in their possession, signed by Ila and Guy Belsky, and which, in the foreclosure proceeding, it had been agreed should be canceled. This was sent June 3, 1925. A receiver was appointed in July, 1925. Mr. Lacy, the agent, testified that he never employed the interveners, and the correspondence above stated was merely for the purpose of learning what had been done by the interveners in respect to the matters mentioned. After the receiver was appointed he sold the ranch and personal property and received certain sums as rent from the ranch.

In December, 1924, the interveners sent the bank a bill for their services in the sum of $1,250 and were paid $500 by the bank. No other or later claim was filed, and in December, 1926, the receiver placed the claim of interveners in the classification of general creditor. Interveners then filed their petition claiming an equitable lien on the assets of the bank and asked to have their claim of $750 preferred in rank to the claims of creditors and depositors.

The district court found that the services of interveners were performed for the bank prior to the time the bank was adjudged insolvent and that interveners were not entitled to an equitable lien as claimed, and the court refused the prayer for the equitable lien, but allowed the fee as a general claim. Interveners appealed to this court.

From the facts disclosed, it is apparent that interveners had closed their services for the bank before the bank was taken over by the commission. The bill they rendered in December,. 1924, indicates that they were expecting their pay from the bank, and not from any particular property or fund. The correspondence had with the commission's agent was not for the purpose of having any other or new services performed, but solely to get information as to some of the details as to what had been done while they were acting as attorneys. Their own letter unequivocally states that their matters had been concluded. They did not file a new claim with the receiver, nor does the claim itself refer to any services performed after the commission took possession of the bank. They did not file or give notice to the bank or the commission of any claim to an attorney's lien on the real estate foreclosed.

The interveners claim right to the equitable lien and preference, upon the general principle that one jointly interested with others in a common trust fund, who in good faith at his own expense maintains the necessary litigation to save it from waste and destruction and restores it for the purpose of the trust and its proper application, is entitled in equity to reimbursement of his costs and expenses out of the fund itself. This is a wholesome equitable principle and in a proper case should be followed, but the facts in this case do not bring it within that rule.

Interveners cite the cases of *In re Estate of Creighton*, 93 Neb. 90, *Stone v. Omaha Fire Ins. Co.*, 61 Neb. 834, and *State v. Wayne County Agricultural Society*, 101 Neb. 427, among other cases, as authority for their claim.

In the *Creighton* case the attorney general employed attorneys, as the statute empowered him to do, to defend in a will contest involving a public charitable trust. The attorneys were informed by the attorney general that the state would not pay for their services and that they would have to receive their pay from the fund recovered. The attorneys, with that understanding, agreed to and did represent the interest of the trust fund and succeeded in

procuring judgment for a large sum for the charity named in the will and were without any legal means of obtaining compensation except from that fund, and they were rewarded for their services from the fund so recovered. Judge Sedgwick, in that opinion, quotes from *Trustees v. Greenough,* 105 U. S. 527, 532: "Where one of many parties having a common interest in a trust fund, at his own expense, takes proper proceedings to save it from destruction and to restore it to the purposes of the trust, he is entitled to reimbursement." And the opinion goes on to state: "These attorneys were not themselves interested in the trust fund, but the state was, and in his official capacity was also the attorney general. These attorneys then represented parties in the trust fund, without any legal means of obtaining compensation except from that fund."

In the case of *Stone v. Omaha Fire Ins. Co.,* 61 Neb. 834, the board of directors of the insurance company which became insolvent, for the purpose of procuring the appointment of a receiver to conserve the assets of the corporation for the benefit of all the stockholders, engaged attorneys to institute proper proceedings therefor, and a receiver was appointed. This court held that their services came within the principle announced in *Trustees v. Greenough,* 105 U. S. 527. The *Wayne County* case, *supra,* was, in a general way, similar to the *Stone* case.

There is no similarity in the facts in this case to the conditions in the cases cited. There was no trust fund, and at the time the services were rendered no one had any interest in the securities except the bank.

The bank, while a going concern, and presumably solvent, employed interveners to foreclose or collect the notes, which they performed for the bank while it was still in operation, and as it plainly appears expected to be paid for their services by the bank. They had no agreement with the bank to be paid out of the proceeds of the litigation, filed no claim for lien on the judgment, nor made claim for such lien to any one before the receiver was ap-

pointed. There is an entire lack of equity in their claim for preference.

The decree of the district court should be, and is,

AFFIRMED.