STATE, EX REL. C. A. SORENSEN, ATTORNEY GENERAL, V. STATE BANK OF OMAHA, E. H. LUIKART, RECEIVER, APPELLANT: GERALDINE KEMP, INTERVENER, APPELLEE.

FILED DECEMBER 31, 1934. NO. 29052.

*F. C. Radke* and *Barlow Nye,* for appellant.

*Jackson B. Chase* and *William H. Thomas, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and LOVEL S. HASTINGS, District Judge.

EBERLY, J.

On August 24, 1931, by a decree made and entered in the district court for Douglas county, the State Bank of Omaha was adjudged insolvent, and it was found necessary that said bank be liquidated. A receiver was appointed, directed to proceed with due diligence to collect the debts owing to the insolvent bank, empowered to sell and dispose of any and all property, both real and personal, belonging to the bank, and, further, authorized and directed to do any and all acts essential and necessary to the speedy closing and winding up of the affairs of the bank. Pursuant to this decree, E. H. Luikart was appointed receiver and he qualified as such, and the regular administration of this trust was entered upon.

On January 13, 1932, a petition of intervention was filed in the cause by Geraldine Kemp, intervener, setting forth that she was employed by the insolvent bank prior to the closing thereof by the state banking department, and remained in the bank's employ until it was so closed, and thereby earned a stipulated salary in the sum of $18.83. Further, that certain other employees of the bank had been employed in a similar manner, rendered similar services, and earned certain amounts as set forth in the petition of intervention; that the claims of these other employees had been duly assigned to intervener herein, and, together with intervener's claim, they aggregated the sum of $458.86, which amount, it was alleged, constituted a preferred claim against the assets of the insolvent bank in the hands of the receiver, and asked that the receiver be ordered to pay said claims in full.

The receiver joined issue, challenging the right to re-

cover as on a preferred claim, though the performance of the services, the amount of compensation due therefor, and the proper assignments thereof to intervener were admitted as alleged in the petition of intervention.

Trial was had to the court and judgment was entered as prayed by intervener as "a preferred claim against the assets of said bank," and the receiver was "ordered and directed to pay said claim in the full amount thereof." The receiver appeals.

In this court appellee bases no claim on the trust character of the sums set forth in her petition of intervention. Her position, as stated in her brief, is:

"It is well settled that after the appointment of a receiver a court of equity may authorize the payment of wages, attorneys' fees and current expenses of liquidation, all on the theory that such expenses are for the interest of mortgage holders, bondholders or depositors, as the case may be. It is also true that work and labor performed within a short time prior to receivership and which is closely and minutely related to work and labor continued after receivership may be properly charged as expenses of receivership."

Thus intervener contends that the applicable rule of law is: "Wages due employees, current operating expenses and current balances arising from indispensable business relations and similar current debts arising within a reasonable time prior to the appointment of a receiver are among the limited class of claims, to which, in its discretion, the court may give priority." In support of this rule the following cases are cited: *Fosdick v. Schall*, 99 U. S. 235; *Wood v. New York, N. E. R. Co.*, 70 Fed. 741; *Central Trust Co. v. East Tennessee V. & G. R. Co.*, 80 Fed. 624; *Bound v. South Carolina R. Co.*, 58 Fed. 473; *Finance Co. v. Charleston, C. & C. R. Co.*, 49 Fed. 693; *Finance Co. v. Charleston, C. & C. R. Co.*, 62 Fed. 205; *Douglass v. Cline*, 12 Bush. (Ky.) 608; *Hale v. Frost*, 99 U. S. 389; *Northern P. R. Co. v. Lamont*, 69 Fed. 23; *Keelyn v. Carolina Mutual Tel. & Tel. Co.*, 90 Fed. 29; *Atlantic Trust Co. v. Woodbridge*

*Canal & Irrigation Co.*, 79 Fed. 39; *Drennen v. Mercantile Trust & Deposit Co.*, 115 Ala. 592, 39 L. R. A. 623; *Lehman Bros. v. Tallassee Mfg. Co.*, 64 Ala. 567; *LeHote v. Boyet*, 85 Miss. 636; *Peoples Nat. Bank v. Virginia Textile Co.*, 104 Va. 34.

A careful examination of these authorities on which appellee relies confirms us in the view that the following would, in a general way, more accurately set forth the true doctrine which they tend to sustain, viz.: "The operating expenses of a public utility corporation, such as a railroad, after it is put in the hands of a receiver and its continued operation directed by order of court, have priority both as to income and corpus over the claims of mortgagees and other lienors, which priority is not based on the element of consent which governs in case of concerns not affected with a public interest, but exists by reason of the fact that the public has an interest in the continued operation of the business, subject to which those having liens or mortgages on such concerns take their security, and on the further fact that the continued operation of a business of this character is necessary to preserve the value of the property in its entirety, and benefits the interest of the lienors by reason of such preservation." 53 C. J. 257.

It will be noted that the cases cited by appellee largely concern railway receiverships. The subjects of litigation in the cases so cited by appellee which do not pertain to railways involve facts so fundamentally similar as to require the application of the doctrine announced by the authorities as applicable to railway receiverships.

The peculiar nature of these subjects of litigation was recognized early in the history of the rule under consideration in *Fosdick v. Schall*, 99 U. S. 235, an early and leading case on this subject, in which Waite, C. J., says, in part (pages 251, 252): "As to the second question, we have no doubt that when a court of chancery is asked by railroad mortgagees to appoint a receiver of railroad property, pending proceedings for foreclosure, the court, in the exercise of a sound judicial discretion, may, as a condition of

issuing the necessary order, impose such terms in reference to the payment from the income during the receivership of outstanding debts for labor, supplies, equipment, or permanent improvement of the mortgaged property as may, under the circumstances of the particular case, appear to be reasonable. Railroad mortgages and the rights of railroad mortgagees are comparatively new in the history of judicial proceedings. They are peculiar in their character and affect peculiar interests. The amounts involved are generally large, and the rights of the parties oftentimes are complicated and conflicting. It rarely happens that a foreclosure is carried through to the end without some concessions by some parties from their strict legal rights, in order to secure advantages that could not otherwise be attained, and which it is supposed will operate for the general good of all who are interested. This results almost as a matter of necessity from the peculiar circumstances which surround such litigation."

Among the peculiar circumstances which are involved in this class of litigation is the appointment of the receiver to continue the business of the insolvent as a going concern, in the continuance of which the public has an interest, and which is essential to maintain and conserve its property values. This involves furnishing to the public, after insolvency, services identical with those afforded prior to receivership. As a necessary incident to the continuance of an uninterrupted business, in this particular class of cases, courts of equity, in the exercise of their discretion, have adjudged to be payable with priority over existing mortgage liens certain claims for services, material, etc., which had been furnished to the insolvent prior to the appointment of the receiver. But the peculiar rule here considered is applicable only when invoked by the peculiar nature of the facts involved in any receivership.

Conceding arguendo that the business of banking is a quasi public business, subject to regulation and control by the state (Comp. St. 1929, sec. 8-114), upon the appointment of its receiver the State Bank of Omaha ceased to be

a going concern, and the receiver thereof was not operating a going business. Its possibility of performing the services intended by its constitution was wholly terminated. The receivership did not contemplate the conservation of its values by its continuance as a going concern. On the contrary, it was the sole duty of the receiver to liquidate and to pay its creditors in the manner provided by law, and that as quickly as possible. Thus, the fundamental reason upon which the rule appellee contends for is based is not presented by the facts which form the basis of the instant case, nor is its application invoked by any deduction which may properly be made therefrom.

"Reason is the soul of the law, and when the reason of any particular law ceases, so does the law itself." Broom's Legal Maxims (9th ed.) 110.

So, also, in the discussion of equities it is not to be forgotten that one of the accepted maxims of equity is that "Equity follows the law."

In *Mathews v. Mobile Mutual Ins. Co.*, 75 Ala. 85, it was held: "A court of equity, in dealing with legal rights, adopts and follows the rules of law, in all cases to which those rules are applicable; and whenever there is a direct rule of law governing the case in all its circumstances, the court is as much bound by it as would be a court of law, if the controversy was there pending."

And, again, in *Hazen v. Reed,* 30 Mich. 331, it was held: "However manifest and strong the natural equities in the specific instance may be, the court may not depart from the settled rule of law in order to do what may be deemed substantial justice in the particular case."

Our legislature has ordained that "The claims of depositors, for deposits, not otherwise secured, and claims of holders of exchange, shall have priority over all other claims, except federal, state, county and municipal taxes, and subject to such taxes, shall at the time of the closing of a bank be a first lien on all the assets of the banking corporation from which they are due and thus under receivership." Comp. St. 1929, sec. 8-1,102.

In construing this statute, in *Guaranty Fund Commission v. Teichmeier,* 119 Neb. 387, it was said: "We are unanimously of the opinion that it is clearly apparent that the legislature intended to give the claims of depositors and holders of exchange priority over all other claims and to fix them as a lien against the assets of the bank."

The foregoing view was reaffirmed in *State v. Thurston State Bank,* 121 Neb. 407, and in that case we also held: "Under section 8-1,102, Comp. St. 1929, priority of unsecured deposits in a state bank is fixed by their status at the time of the actual closing of the bank when the court, under section 8-190, Comp. St. 1929, adjudges it to be insolvent and orders it liquidated."

Indeed, in principle, the doctrine opposed to appellee's contention was clearly announced in *State v. Citizens State Bank,* 117 Neb. 860, wherein, in effect, we held that, where an employee of a state bank has rendered services on the general credit of his employer, he does not, after insolvency, have any other or greater right than any other general creditor.

It is obvious that in the award of preference in the instant case the district court erred, and that the claim was properly classified by the receiver as a nonpreferred claim of a general creditor.

Therefore, the decree of the district court for Douglas county awarding a preference to the intervener is reversed, and the cause is remanded, with directions to enter a decree in conformity with this opinion.

REVERSED.