LAURIDS JORGENSON, ADMINISTRATOR, APPELLANT, V. DE-
PARTMENT OF BANKING, APPELLEE.

284 N. W. 747

FILED MARCH 17, 1939.   No. 30434.

*McKillip & Barth, J. J. Thomas* and *Ivan A. Blevens,* for appellant.

*F. C. Radke, Robert H. Downing* and *Harold Johnson, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ.

ROSE, J.

This is a controversy between Laurids Jorgenson, administrator of the estate of John L. Jorgenson, deceased, plaintiff, and the department of banking as receiver of the Bank of Staplehurst, an insolvent corporation, defendant, over an alleged trust fund of $12,000 in possession of the receiver.

John L. Jorgenson was controlling stockholder, director, cashier and active manager of the bank. He died January 27, 1933. The administrator of his estate filed with the receiver August 13, 1934, a claim for the trust fund of $12,000 against the receiver, payable in full from the assets of the bank. The fund in controversy was claimed by the administrator on the ground that John L. Jorgenson, individually, entrusted it to the bank to meet a contingent liability for bank assessments levied by the banking department under a statute challenged as void in pending litigation.

By act of March 18, 1930, the legislature attempted to add to the state banking laws a provision for the creation of a "depositors' final settlement fund," in addition to the "depositors' guaranty fund." Laws 1930 (Special Session) ch. 6. The purpose of the new act was to provide funds for payment of depositors in insolvent state banks by assessments levied from time to time by the state banking department on solvent state banks, an act adjudged void November 10, 1932. *Hubbell Bank v. Bryan,* 124 Neb. 51, 245 N. W. 20. Assessments levied against the Bank of Staplehurst under the legislative act of 1930, before it was adjudged void, aggregated $16,961.04, but were never paid.

The claim of plaintiff is, in effect, that John L. Jorgenson was coerced by the presumptively valid legislation, by the orders of the banking department under it, by the assessments and by drafts on the bank for their payment, to contribute personally from his own estate to the bank a temporary contingent fund of $12,000 to meet those assessments, if the act of 1930 should be adjudged valid, and that his money, in equity, should be restored to his estate as a trust fund, since the assessments and contingency had no existence in fact or law, the fund being his alone at all times. There is also the alternative claim that the fund, even if voluntarily created, was provided through mistake and consequently is recoverable as a trust fund.

The receiver rejected the claim as invalid, and plaintiff, the administrator, brought this suit in equity in the district court for Seward county December 6, 1934, to recover the fund as trust property belonging to the estate of decedent.

Defendant denied that the fund in controversy was a trust fund and pleaded in substance, among other things, that it was a voluntary contribution to avoid a formal stock assessment, to reduce existing deficits in bank funds, to increase depleted bank reserve and to keep the bank open for business.

In a reply to the answer it was alleged that the 12,000-dollar fund was placed in the bank for the sole purpose of paying the assessments for the benefit of the "depositors' final settlement fund," in the event of their adjudicated validity; that otherwise it was to be returned to the owner; that the bank never acquired title to it or any interest in it at any time.

Upon a trial of the cause the district court found that the fund in controversy was not a trust fund and dismissed the suit. Plaintiff appealed.

It is earnestly argued on behalf of plaintiff that the undisputed evidence establishes his equitable right to this 12,000-dollar fund. In this connection reference is made to the following evidential items of proof: The fund obtained

by the bank consisted of Ocken note and mortgage for $8,000 and cash of $4,000, personal funds of John L. Jorgenson. The bank books showed as "contingent reserve for depositors' final settlement fund," $12,434.04. There was a corresponding charge to profit and loss of $12,434.04. Comments of counsel for plaintiff on these and other entries are that there were no assets in the undivided profit account and that "this was a mere setting up of figures—a nullity;" that when the bank was next examined it was criticized by the banking department for so doing and ordered "to put up some actual reserves." In compliance the 12,000-dollar reserves were put up by John L. Jorgenson, he making at the time on the bank books an entry showing Ocken note placed to take care of reserve for depositors' guaranty fund set up previously by order of banking department, $8,000; cash put in by John L. Jorgenson, same as above, $4,000; that these funds were traced into the bank and into the hands of the receiver and are trust funds recoverable in full from the assets of the bank in preference to other creditors, funds in the hands of the receiver being sufficient for that purpose; that, regardless of bank book entries, condition of the bank and orders of the banking department, the real purpose of the $12,000 in the bank was the creation of a temporary contingent "depositors' final settlement fund" which had no existence after the act of 1930 was decreed invalid, leaving the title and right of possession in the owner. These propositions were argued at length with reference to evidence and to decisions applying rules of equity to plaintiff's theory of the case.

Does the preponderance of the evidence prove that the fund in issue was a trust fund? In the transactions involved John L. Jorgenson acted for himself personally and for the bank as cashier, director, owner of 75 per cent. of its stock and manager. He was an experienced banker with authority to make his bank books and his bank records divulge the true nature of his banking transactions. He owed that duty to the minority stockholders, to the bank, to the depositors, to creditors and to the banking depart-

ment of the state. Was he both the contributor of the fund and the beneficiary of the trust, if the legislation under which his bank was assessed for the final settlement fund should be adjudged void? The petition alleges and the evidence shows that he put the 12,000-dollar fund in the assets of the bank. The statute gives depositors and holders of exchange preferential liens on all assets of bank, taxes excepted. Comp. St. 1929, sec. 8-1,102. Plaintiff did not prove any oral or written contract between Jorgenson and the bank creating the trust as a ground for equitable relief. If the fund belonged to Jorgenson or his estate at all times it was never an asset of the bank but a liability. A specific designation of the fund as a special deposit to be reclaimed as such has not been found in the evidence. There was no specific account or record to show definitely that the fund was a liability owing by the bank to Jorgenson. After demands had been made by the banking department for a liability account on the bank books to meet the assessments for the depositors' final settlement fund, additional money for that purpose was not at first put into the bank, but credits to such an account were charged against other accounts, overdrawing them. There is evidence tending to prove that the 12,000-dollar fund was a voluntary contribution to restore overdrawn accounts and was retained and used as an asset of the bank. March 23, 1932, Jorgenson reported to the banking department an earning's deficit of $12,444.19 and $12,000 placed in profit and loss account. June 30, 1932, the same fund was reported by the cashier, Jorgenson, to the banking department as "voluntary contributions to surplus or profits." That it was so considered is indicated by minutes of a meeting of the bank directors July 1, 1932. It was so communicated to the banking department in a report by Jorgenson, July 12, 1932. Published reports of the bank fail to show a liability to him for this fund.

Official examinations of the bank and directions of the banking department from time to time tend to prove the following facts: January 4, 1932, the bank was found to

have for elimination assets aggregating $188,292.55. On the date of the examination, the legal reserve was only 2 per cent. and the average since the last previous examination was only 8 per cent.—an insolvent condition. February 29, 1932, was the date on which the 12,000-dollar fund was placed in the bank and credited to the profit and loss account.

Employees of the bank testified to the effect that Jorgenson knew the condition of the bank, that there was an impairment of capital and that the fund was put in the bank to take up deficits.

As early as April 22, 1930, the bank had been examined with the result that it was ordered to eliminate assets totaling $41,806.11. To take up bank losses Jorgenson on different occasions contributed from his personal estate approximately $40,000. His devotion to the interests of the bank is reflected by his personal contributions to its assets during a distressing financial depression. He kept it open for commercial business at the risk of his personal contributions to its assets. It is a reasonable and logical inference from all the facts and circumstances, including his own acts, that he was more concerned about the safety of his bank than of the hazard of his $12,000. If that item was a trust fund in the bank, it was an additional liability of the bank when in an insolvent condition, a precarious place for a trust fund within the knowledge of Jorgenson. If it was an asset, as he certified in his reports, it stood for integrity of the bank and for the protection of its depositors and other creditors who put their trust in him.

A plaintiff in equity who claims a trust fund payable in full from the assets of an insolvent state bank in the hands of the receiver must establish his title to it. *In re State Bank of Elkhorn*, 129 Neb. 506, 262 N. W. 15. In the present instance plaintiff did not sustain the burden of proof on that issue. The proper deduction from the evidence is that the fund in litigation was an asset of the bank. As such the banking law deals with it as follows:

"The claims of depositors, for deposits, not otherwise

secured, and claims of holders of exchange, shall have priority over all other claims, except federal, state, county and municipal taxes, and subject to such taxes, shall at the time of the closing of a bank be a first lien on all the assets of the banking corporation from which they are due and thus under receivership." Comp. St. 1929, sec. 8-1,102. *State v. State Bank of Omaha,* 128 Neb. 148, 258 N. W. 260.

When it is determined that the fund is an asset of the bank in the hands of the receiver, a court of equity must follow the banking law specifically dealing with it as such. The finding upon the trial *de novo* is that the fund in issue is an asset of the bank and not a trust fund belonging to the estate of John L. Jorgenson, deceased. It follows that the judgment below is

AFFIRMED.

MESSMORE, J., dissenting.

The 1930 legislature, for the purpose of creating a fund with which to pay depositors in state banks previously closed, provided for the creation of a "depositors' final settlement fund," levying an assessment of two tenths of one per cent. of the average daily deposits on all corporations engaged in the business of banking, said assessments to continue for a period of 10 years, beginning with the year 1931. During the time that the action was pending in the supreme court of this state in which the constitutionality of the act was being tested, assessments were made against Jorgenson's bank at Staplehurst, in the aggregate amount of $16,-961.04. Three sight drafts were drawn for the payment of these assessments which were refused. The bank was examined by the department of banking under date of April 22, 1930, as shown by defendant's answer. The report of the department showed: "Guaranty fund assessments, all unpaid assessments up to and including 1930 should be set up on the books and shown as liability." May 16, 1931, the examiner, on behalf of the department of banking, ordered the bank to set up on its books a reserve account for guaranty and final settlement funds. In obedience to this order, the bank set up on its books an account entitled

"Contingent Reserve for Depositors' Final Settlement Fund," and entered in that account a credit of $12,434.04. As an offset entry the undivided profits account was debited with a like sum. Immediately prior to this order the account was overdrawn in the amount of $5,198.66, and the additional debit charge of $12,434.04 resulted in increasing the deficit to $17,632.70. On February 20, 1932, a further credit was entered on the "Contingent Reserve for Depositors' Final Settlement Fund" account in the sum of $1,365.97, and a like amount debited to the profit and loss account, creating a total credit in the final settlement fund of $13,800.01, resulting in a deficit in the undivided profits account of $13,864.73. While the undivided profits account was overdrawn in the amount of $13,864.73, of this sum $13,800.01 was created by the credits to the contingent reserve account. Eliminating the credits to the contingent reserve account, it would leave the profit and loss account overdrawn in the sum of $64.72.

On January 4, 1932, another examination of the bank was made, and the examiner reported that there existed a deficit in the undivided profits account in the sum of $12,-444.19. This of course indicated an impairment of the capital structure, and Mr. Jorgenson was directed to restore this impairment which had been caused by the credits to the contingent reserve account. On February 29, 1932, Mr. Jorgenson put up the two items in controversy, to wit, a note and mortgage of L. C. Ocken for $8,000, and cash from his personal funds in the sum of $4,000, and, as an offset entry, this 12,000-dollar fund was credited to the undivided profits account. The journal entry of this $12,000 is as follows:

"Note #24910 L. Ocken placed to take care of Res(erve) for Dep(ositors) Guar(antee) Fund set up previously by orders of Banking Dept._____$8,000
"Cash put in by J. L. Jorgenson. Same as above_____$4,000"

This entry of figures to the credit of this account did not

create a reserve. To create a reserve it is necessary to make a transfer from an existing reserve account, or to put up new assets. The entry of a credit of $12,434.04 to the contingent reserve account and a debit of a like amount to the undivided profits account would effect a transfer of reserve assets, provided there were assets in the account that could be transferred; but there were none.

On this bookkeeping, as shown by placing the 12,000-dollar fund in the account of profit and loss, the department of banking contends that the funds were intermingled and constituted an asset of the bank and were voluntary contributions made for that purpose, and there is evidence to this effect by the oral statement of a bank clerk of Jorgenson. However, the evidence is more persuasive that Jorgenson put up this 12,000-dollar fund, and it was carried and designated as "Contingent Reserve for Depositors' Final Settlement Fund," carried in the same title on the books of the banking department, and shown in the published reports. In other words, the fund was so placed under the direction of the department of banking that it constituted a condition contingent on the validity of the act of March 18, 1930. The reason for examining the bank in the first instance, the notations made relative to the funds of the bank, all relate to the assessments; that is the history previous to the closing of the doors of the bank. In this connection, and as stated in the majority opinion, Mr. Jorgenson did contribute more than $40,000 of his own personal funds in an effort to protect his depositors and creditors, truly commendable and unusual. In this connection the majority opinion states: "If that item was a trust fund in the bank, it was an additional liability of the bank when in an insolvent condition, a precarious place for a trust fund within the knowledge of Jorgenson."

We are concerned with a specific fund which Jorgenson was directed and ordered to put up for a specific purpose. He was not in a position to much longer refuse, and when this fund was put up by him the validity of this act was being questioned. No one knew whether it would be held

valid, but, inasmuch as it was in existence, Jorgenson was requested to comply with it, and he did so.

Some contention is made that there was no agreement between the department of banking and Jorgenson, oral or written, as to how the fund should be carried, or that he was to receive it back in the event that the act should be declared void, or, if valid, whether the fund would be used for the purpose for which the act was created. This issue was one of intention. The intention with which the money was placed in the reserve fund controls, and the evidence in this case, without question, supports the plaintiff. Mathiesen, who worked for Jorgenson and was later assistant receiver in the department of banking, and Dahl, who also worked for Jorgenson, testified that the 12,000-dollar fund was placed in the undivided profits account to cover the contingent reserve for depositors' final settlement fund. This evidence is not controverted. The intention of the parties may be inferred from all the facts and circumstances surrounding the transaction. This principle of law is too well established to require citation of authority.

Without further setting out the documentary evidence, but repeating that throughout the record this fund was carried through all of the reports, as far as I am able to ascertain from the documentary evidence in this record, it shows that the fund was a contingent reserve for depositors' final settlement fund. This court declared the act of March 18, 1930, void, and its final death-blow occurred May 22, 1933, when a petition on writ of certiorari was denied by the United States supreme court. Therefore, all of the funds accruing during the life of the act would be released; they could not be legally used for the purpose intended by the act. Mr. Jorgenson died before the act in question was finally adjudicated. The plaintiff here was not familiar with the situation, and had to acquaint himself with the facts as best he could. He filed this action in time.

I believe the position of the plaintiff, that this 12,000-dollar fund was put up by Mr. Jorgenson for a specific purpose, conditioned upon the validity of the act of March 18,

1930, and that this was the only reason therefor, is well taken. This fund was his money, and it was not taken out of the bank or out of any other fund in the bank, as shown by the record. In the event of the failure of this condition, upon which this money was placed by Jorgenson, his estate is entitled to the fund.