**UNITED STATES of America, Appellee,**

v.

**Theodore V. OLSON; Sandra A. Olson, Defendants–Appellees,**

**William L. Needler of William L. Needler & Associates, Ltd., Frank C. Heinisch of Heinisch Law Office, Appellants.**

No. 92–3202.

United States Court of Appeals, Eighth Circuit.

Submitted May 13, 1993.

Decided July 21, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 1, 1993.

William Needler, Ogallala, NE, for appellants.

Edward T. Perelmuter, Dept. of Justice, Washington, DC, for appellee.

Before BOWMAN and MAGILL, Circuit Judges, and HENDREN,* District Judge.

HENDREN, District Judge.

This appeal involves a claim for attorneys' fees in connection with a bankruptcy matter which claim was initially denied by a bankruptcy court and then, on appeal, by the district court's affirmance of that denial.

The claimants are the appellants, William L. Needler of William L. Needler & Associates, Ltd. and Frank C. Heinisch of the Heinisch Law Firm (hereinafter called the "lawyers") who represented Ted and Sandra Olson (the "Olsons") in a Chapter 11 bankruptcy which was filed March 1, 1982 in U.S. Bankruptcy Court, District of Nebraska.[1] By their legal advice and counseling, the lawyers, over the protests and objections of several creditors, rendered services which facilitated the harvesting of a substantial corn crop in 1982. After payment of certain administrative claims authorized by the bankruptcy court, there remained of the proceeds from 1982 corn crop some $294,000.00 (the "fund"). Numerous parties—not including the lawyers—claimed an interest in this fund and, by agreement of Olsons and all such claimants, the fund was placed in an escrow account with Overland National Bank of Grand Island (the "bank"). The bankruptcy court ordered that the liens of all claimants to the 1982 corn crop be transferred to the fund and that any entity or individual with a claim to the 1982 crop proceeds make application for payment of that claim out of the fund by February 25, 1983. The lawyers made no such application. Thereafter, on January 27, 1984, the first bankruptcy case was dismissed by the bankruptcy court. The United States District Court for the District of Nebraska affirmed this dismissal and there was no appeal from that affirmance.

On March 15, 1984, the lawyers obtained a judgment against Ted Olson (but *not* against Sandra Olson) in Nebraska state court for some $359,030.33, plus costs and interest (the "lawyers' judgment").

On July 27, 1984, the bank filed an interpleader action in district court and paid the fund into the registry of the court. On May 13, 1985, Olsons filed a second Chapter 11 bankruptcy petition.[2]

On July 8, 1984, the district court transferred the interpleader action filed by the bank over to the bankruptcy court for disposition as an adversary proceeding in connection with the bankruptcy case.

The bankruptcy court denied the lawyers' claims for a lien on the fund holding, *inter alia*, that the lawyers (a) could not properly claim a lien under the Nebraska Attorney Lien Statute (Nebraska Revised Statute § 7–108 (reissued 1987)); (b) could not claim an interest in the fund based upon a judgment lien; and (c) could not claim an interest in the fund as a matter of equity. *In re Olson,* 101 B.R. 134 (Bankr.D.Neb.1989).

The decision of the bankruptcy court was affirmed by the United States District Court for the District of Nebraska (Hon. William G. Cambridge) in a Memorandum Opinion and Order dated July 6, 1992, and filed for record July 8, 1992.

*Standard of Review*

A district court may review a bankruptcy court's legal conclusions *de novo,* but the bankruptcy court's findings of fact shall not be set aside unless clearly erroneous. Bankr.R. 8013; *See e.g., In re Hunter,* 771 F.2d 1126 (8th Cir.1985); *In re Martin,* 761 F.2d 472 (8th Cir.1985); *See also* Bankr.R. 7052 (Fed.R.Civ.P. 52 applies in adversary bankruptcy proceedings). The circuit court, as the second court of review, conducts an independent review of the bankruptcy court's

---

* The HONORABLE JIMM LARRY HENDREN, United States District Judge for the Western District of Arkansas, sitting by designation.

1. Hon. Richard F. Stageman (hereinafter called the "First Bankruptcy.")

2. Hon. Timothy J. Mahoney, Chief Judge, U.S. Bankruptcy Court, District of Nebraska (hereinafter called the "Second Bankruptcy").

judgment asking whether the bankruptcy court's legal conclusions are correct and whether its factual findings are clearly erroneous. *Wegner v. Grunewaldt,* 821 F.2d 1317, 1320 (8th Cir.1987).

Accordingly, we review the appellants' contentions based on the foregoing standards of review.

### Discussion

The central issue on appeal is whether the lawyers, in a second bankruptcy, should have a lien on a fund generated during the first bankruptcy when no such lien was claimed before the first bankruptcy was finally terminated. Nebraska law governs this issue. *In re Pierce,* 809 F.2d 1356, 1359 (8th Cir.1987) (nature, extent and validity of claimed attorneys' lien in federal bankruptcy proceedings is determined by state law).

The lawyers assert their lien under several different theories, all of which will be discussed:

### Statutory Attorney's Lien Theory

▉ The lawyers claim they are entitled to an attorneys' lien on the fund under Nebraska law and that the lower courts erred in failing to so hold.

In Nebraska, the only statutory provision providing for a lien for an attorney's fee is Nebraska Code § 7–108 which reads as follows:

> An attorney has a lien for a general balance of compensation upon any papers of his client which have come into his possession in the course of his professional employment; and upon money in his hands belonging to his client, and in the hands of the adverse party in an action or proceeding in which the attorney was employed from the time of giving notice ot the lien to that party.

▉ The above statute, in derogation of common law, must be strictly construed. *Lewis v. Gallemore,* 175 Neb. 279, 121 N.W.2d 388, 391 (1963).

The account held by the bank was created pursuant to an order of the bankruptcy court in the first bankruptcy case which directed that the proceeds of the 1982 corn crop be deposited in an escrow account selected by the parties. The lawyers were not among the "parties" making this agreement, and, in fact, were not at that time claiming a lien for services rendered. The bank was acting for the benefit of all known claimants to the fund. It had no interest in the proceeds and was completely indifferent as to which claimant would ultimately get all or part of the fund. Other than having an interest in obtaining their escrow fees, it is undisputed that the bank had no beneficial interest in the funds thus placed in escrow.

▉ Where it appears that money is neither in the hands of the attorney nor in the hands of an adverse party—but rather is in the hands of a third party—an attorney may not have a lien under Nebraska law. *See Lewis v. Gallemore,* 175 Neb. 279, 121 N.W.2d 388 (Neb.1963); and *Culhane v. Anderson,* 17 F.2d 559 (8th Cir.1927). Under Nebraska law, a bill of interpleader is an equitable remedy whereby a *disinterested* stakeholder in possession of a fund or other property claimed by rivals may require the rivals to litigate among themselves as to the issue of the ownership without embroiling the stakeholder. *See Burke Lumber & Coal Co. v. Anderson,* 162 Neb. 551, 76 N.W.2d 630 (1956).

▉ The lower courts were correct in holding that the bank was not an adverse party within the meaning of the Nebraska attorney lien statute, but, instead and in fact, was a "disinterested stakeholder" which had been asked by interested parties to perform the very service that it did perform.

In this case, the lawyers' lien claim is based on services provided in the first bankruptcy which was dismissed in January of 1984. Prior to that dismissal, the lawyers failed to assert any lien on the corn crop fund which was ultimately interpleaded. After dismissal of the bankruptcy case, the lawyers attempted to assert a lien against the proceeds then in possession of the bank and this, among other things, caused the bank to file the interpleader action. The facts therefore show that if the lawyers had been entitled to any type of attorneys' lien under Nebraska law, it would have been valid only during the

pendency of the first bankruptcy proceeding. The district court found and the record shows that the bankruptcy court expressly invited the parties with claims against the fund to apply to the court for payment by a specific date and the lawyers made no such application. On oral argument, counsel for the lawyers stated no such application was made since it was believed such an application would be useless in view of prior rulings by the bankruptcy courts. A review of the orders in this case as well as various reported related cases, fails to support that assertion. *See In re Olson,* 20 B.R. 206 (D.Neb. 1982); *In re Olson,* 21 B.R. 123 (Bankr. D.Neb.1982); *In re Olson,* 22 B.R. 473 (D.Neb.1982); *In re Olson,* 36 B.R. 74 (D.Neb.1983); *In re Olson,* 730 F.2d 1109 (8th Cir.1984); *In re Olson,* 101 B.R. 134 (Bankr.D.Neb.1989), *aff'd* 133 B.R. 1016 (D.Neb.1991), *adhered to, mod. on reconsideration,* No. 89-0-553-555, 1992 WL 235680, 1992 U.S.Dist.LEXIS 1114 (D.Neb. July 6, 1992); Order of the Bankruptcy Court; and Memorandum Opinion and Order of the District Court, filed July 6, 1992.

We therefore believe that, in rejecting the lawyers' claim of an attorneys' lien under the Nebraska lien laws, the legal conclusions of the bankruptcy court are correct and their factual findings are not clearly erroneous.

### Equitable Lien Theory

■ The lawyers also claim a lien on the fund interpleaded by the bank under general equitable principles. They assert they are responsible for the existence of the fund and contend they should be rewarded from the proceeds thereof prior to other creditors as a matter of equity under the common fund doctrine.

■ The so-called "common fund doctrine" has been enunciated in Nebraska as follows:

Where one has gone into a court of equity and, taking the risk of litigation on himself, has created or preserved or protected a fund in which others are entitled to share, such others will be required to contribute their share to the reasonable costs of the litigation including reasonable attorney's fees to complainant's counsel.

*Blacker v. Kitchen Brothers Hotel Co.,* 133 Neb. 66, 273 N.W. 836 (1937). The scope of application of this "common fund doctrine" is limited and generally is applied only for "dominating reasons of justice." *See Riddle v. Hudgins,* 58 F. 490 (8th Cir.1893) and *Linn v. Linn,* 146 Neb. 666, 21 N.W.2d 283 (1946).

In this case, the bankruptcy court acknowledged the lawyers had rendered services during the prior bankruptcy that made it possible for the planting of the 1982 corn crop. However, the court concluded the attorneys had not "created" the fund as is required by the "common fund doctrine." The court noted the attorneys had not obtained a judgment or a settlement that had resulted in the accumulation of the monies nor had they actually done the planting and harvesting of the corn crop. This was done by the clients.

The lawyers argue they "created the fund" by providing legal services to the Olsons which made it possible for them to secure financing, avoid foreclosure on a loss of farm machinery and to otherwise produce the 1982 corn crop. The lower courts rejected this contention and no case has been cited or found which so holds. If this argument has merit, one might also meritoriously argue that *any* service of a lawyer to a business client would entitle the lawyer to an equitable lien on the client's subsequent earnings. Such is not the law, nor, in the court's opinion, should it be.

■ There is some authority for the proposition that where services by lawyers *directly* result in the creation or preservation of a fund, the "common fund doctrine" might apply. *See Kaiman v. Mercy Midlands Medical and Dental Plan,* 491 N.W.2d 356 (Neb.App.1992). However, in the case at bar, it is clear that the services provided by the lawyers in the prior bankruptcy action did not *directly* result in the creation of the interpleaded funds.

The court perceives no "dominating reasons of justice" mandating that the lawyers be awarded an equitable lien on the interpleaded fund. The lawyers did not have an agreement with the Olsons to recover their fees from the proceeds of the 1982 corn crop which became the interpleaded fund and the

lawyers did not assert a claim against the fund during the first bankruptcy proceeding even though the bankruptcy court had expressly directed that any claims against the fund be made by a specific date. *See State v. Citizens Bank,* 117 Neb. 860, 223 N.W. 282 (1929) (denying claim of attorneys to equitable lien on fund resulting from judgment because the attorneys had no agreement with the client to recover their fees from the proceeds of the litigation and did not file a claim for a lien on the judgment—court held there was entire lack of equity in attorneys' claim for preference). Under these facts, the lower courts did not abuse their discretion in determining that the lawyers are not entitled to an equitable lien on the interpleaded fund. We believe that determination is based upon correct legal conclusions and factual findings which are not clearly erroneous.

### Judgment Lien Theory

After the dismissal of the first bankruptcy case, the lawyers obtained a judgment by confession against one of the debtors—Ted Olson. The judgment was not taken against Olson's wife, Sandra. Although this issue was considered by the bankruptcy court, the lawyers failed to reassert the issue on their appeal to the district court. Accordingly, this issue should not be considered by this court at all as it was waived when the lawyers did not bring it to the attention of the district court. The court notes, in passing, however, that under Nebraska law, a judgment lien attaches to personal property of the debtor "from the time [it is] seized in execution." Neb.Rev.Stat. § 25–1504 (1989).

In this case, the lawyers never seized the crop proceeds in execution. As the bankruptcy court noted, the lawyers commenced garnishment proceedings against the bank but failed to complete the process under relevant Nebraska provisions. Nebraska requires strict compliance with attachment procedures as set out in the statute and failure to follow the same results in failure of the asserted judgment lien. *See N.C. and Hybrids v. Growers Seed Assn.,* 219 Neb. 296, 363 N.W.2d 362 (1985). Accordingly, the bankruptcy court was correct in holding that the lawyers have no judgment lien on the fund in question.

### Summary and Conclusion

In summary, under governing Nebraska law, the lawyers do not have an attorneys' lien since the facts do not bring their claims within the purview of the statute in question. They are not entitled to an equitable lien under the "common fund doctrine" since the proof did not establish that the lawyers "created" the fund on which the lien was claimed. At best, the lawyers demonstrated that their legal services facilitated the growing of the crop which resulted in the creation of the fund. The facts therefore do not bring the claim within the purview of the "common fund doctrine" and the claim must fail under that theory. Finally, the lawyers do not have a judgment lien on the interpleaded funds since they never acted to perfect their alleged lien under Nebraska law.

For the reasons hereinabove stated, the findings and orders of the lower courts are in all respects affirmed.