DAVID BLACKER, APPELLEE, V. KITCHEN BROTHERS HOTEL COMPANY ET AL., APPELLEES: BRUNO F. MEYER, APPELLANT.

273 N. W. 836

FILED JUNE 22, 1937. No. 30028.

*Walter E. Schroeder* and *Howard Saxton,* for appellant.

*Fradenburg, Webb, Beber, Klutznick & Kelley, Finlayson, Burke & McKie, Leon & White* and *Kennedy, Holland, De Lacy & Svoboda, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, PAINE and CARTER, JJ.

CARTER, J.

This. is an appeal from two orders of the district court for Douglas county allowing V. Huhnke, a bondholder of the Kitchen Brothers Hotel Company, $500 for expenses and $2,500 for attorney's fees for the purpose of prosecuting an appeal to the supreme court in a case in which the rights of all bondholders were involved.

The record discloses that in the early part of 1935 a proposed plan of reorganization of the Kitchen Brothers Hotel Company was filed in the district court for Douglas county. It shows that V. Huhnke appeared as a bondholder and objected to the plan and eventually secured a withdrawal of the plan to the benefit of all bondholders. In December, 1935, a new proposed plan of reorganization was filed for the consideration of the court. V. Huhnke again appeared as a bondholder and objected to the jurisdiction of the court over the subject-matter and over the person of the objector as a bondholder and all other bondholders similarly situated. Many hearings were held on various phases of the matter and the case finally tried. Thereafter the court approved the reorganization plan. The property involved in

this proceeding ranges in value from $750,000 to $1,250,000, as represented and evidenced by the investment in the Paxton Hotel in Omaha and, in fact, belongs to the bondholders. The objector, V. Huhnke, contends that the importance of the matters involved and the desirability of finally adjudicating the rights of all the parties to the action in the court of last resort in this state necessitates that an appeal be taken to the supreme court to secure a final determination. The objector, V. Huhnke, claims to be the only bondholder who has preserved a record in the district court that would properly raise all the issues necessary to such a final determination. The record shows that the legal work and briefing would be intricate and involved and would necessitate much time and study. The objector further alleged that such an appeal would be beneficial to all bondholders involved. The trial court, after a hearing, sustained the contentions of V. Huhnke and made the allowances for costs and attorney's fees hereinbefore set out and directed the Omaha Safe Deposit Company, successor trustee, to pay said amounts to the attorney for the said V. Huhnke. Bruno F. Meyer, a bondholder, filed a motion for a new trial which was overruled. Bruno F. Meyer then perfected his appeal to this court. The question for our determination is whether the trial court properly made the allowances for attorney's fees and expenses.

The order of the court allowing expense money to the attorney for V. Huhnke contained the following language: "That Omaha Safe Deposit Company, successor trustee in the above entitled matter, be and it hereby is authorized and directed to pay forthwith to Fred S. White, attorney for V. Huhnke, objecting bondholder, the sum of $500 to be expended for the preparation of the bill of exceptions, transcript, briefs and the perfection of an appeal to the supreme court of the state of Nebraska, and such other sums, if any, as may be incurred as costs in connection with the perfecting of an appeal to the supreme court of the state of Nebraska." The order allowing attorney's fees to the attorney for V. Huhnke contained the following

language: "That the Omaha Safe Deposit Company, successor trustee in the above entitled matter, be and hereby is authorized and directed to pay forthwith to Fred S. White, attorney for V. Huhnke, objecting bondholder, the sum of $2,500 as attorney's fees for services heretofore rendered in the district court in said above entitled matters and for his services in connection with perfecting the appeal and the preparing of a written brief, for filing in the supreme court of the state of Nebraska, in the above entitled matter." It will be noted that the order allowing expense money is made to cover expenses to be incurred in the future, while the order allowing attorney's fees is made for services rendered as well as for services to be rendered in the future.

The general rule in this state as to the allowance of attorney's fees has been stated by this court as follows: "It is the practice in this state to allow the recovery of attorneys' fees only in such cases as are provided for by law, or where the uniform course of procedure has been to allow such recovery. As a general rule of practice in this state, attorneys' fees are allowed to the successful party in litigation only where such allowance is provided by statute." *Higgins v. Case Threshing Machine Co.*, 95 Neb. 3, 144 N. W. 1037; *State v. Sagl*, 119 Neb. 374, 229 N. W. 118. Appellee has cited no statute, nor have we found one, authorizing the allowances made in this case.

The general rule announced in many decisions is that, where the services of a litigant's attorney result in rescuing or preserving a large amount of property or funds, not only for the benefit of the particular litigant, but for the benefit of all others in the same class, and by means of these services the property or funds are conserved for the benefit of all, nothing is plainer than that the cost should be borne by those benefited by it. *Trustees v. Greenough*, 105 U. S. 527, 26 L. Ed. 1157; *Hempstead v. Meadville Theological School*, 286 Pa. St. 493, 134 Atl. 103; *In re Estate of Creighton*, 93 Neb. 90, 139 N. W. 827.

In *Buell v. Kanawha Lumber Corporation*, 201 Fed. 762,

the court stated the rule as follows: "The general equitable principle on which American courts act in allowing counsel fees from a fund in court for distribution is that where one has gone into a court of equity, and, taking the risk of litigation on himself, has created or preserved or protected a fund in which others are entitled to share, such others will be required to contribute their share to the reasonable costs and expenses of the litigation, including reasonable fees to complainant's counsel; but, to warrant such allowance, the fund so created or preserved must be one applicable to the claims of the complainant and those interested with him, and a fund on which others have liens superior to complainant's claim cannot be subjected to such payments to the displacement of such liens."

Where one goes into a court of equity, and takes the risk of litigation on himself, and creates or protects a fund to a share in which others are entitled, those others will not be permitted to lie back and share the results of these successful labors without contributing their due share. But this rule is based on the theory that all in the class benefited should contribute to the expense. Their share of the expense is dependent entirely upon the success of the litigation. It necessarily follows that no liability for attorney's fees and expenses accrues until the litigation has been successfully terminated with actual benefits accruing to others in the class. If the litigant is unsuccessful, no benefit to others in the class accrues and he must undergo the fate of any other unsuccessful litigant; that is, pay the costs and expenses himself. We know of no rule, nor have we found any case, that authorizes the allowance of attorney's fees and expenses in a case such as we have before us, on any basis other than that of benefits accruing as a result of successful litigation.

At the time the allowances were made in the instant case, it had not been determined whether the litigation was beneficial to other bondholders for the reason that there had been no final determination of the matter. We are of the opinion that the trial court could properly allow at-

torney's fees and expenses in connection with services rendered that were beneficial to other members of the class, but that its attempt to allow expenses and attorney's fees for work to be done in the future is without authority of law. Such allowances against others similarly situated being based upon the benefits received by them, there is nothing upon which to base such an allowance until the services have been performed and the resulting benefits, if any, determined.

We necessarily conclude that the trial court erred in allowing attorney's fees and expenses for perfecting an appeal to this court. The trial court could, if the facts warranted, have allowed attorney's fees and expenses for beneficial services already rendered to bondholders similarly situated. We are unable, however, under the state of the record, to determine what amount was allowed for attorney's fees and expenses for services then rendered that were beneficial to all bondholders. For that reason, the orders appealed from will be reversed without prejudice to the right of V. Huhnke to file a claim for any attorney's fees and expenses to which she may be entitled under the holdings of this opinion.

REVERSED.