**HARBAGE v TRACY, Aud., et**

Ohio Appeals, 2nd Dist, Franklin Co

Nos. 3027-3031. Decided June 14, 1939

Agnes B. Dickinson, Columbus, and Gilbert Bettman, Cincinnati, for plaintiff-appellee.

Eagleson & Laylin, Columbus, for defendant-appellant, J. Freer Bittinger.

## OPINION

By GEIGER, J.

These two cases are before this court on appeal on question of law and fact from the court below. Counsel have stipulated as to the facts in this case and have filed voluminous briefs. The questions raised may be best understood by examining the allegations of the pleadings below.

We take up first those involved in case No. 3027. It is alleged that the plaintiff is a taxpayer and the defendant is the acting auditor of state, sued in that capacity. The plaintiff petitions the court for a temporary and permanent injunction restraining defendant from paying to the members of the General Assembly of the State of Ohio any money whatsoever for mileage between July 27, 1936, and December 8, 1936, during which period no session of the General Assembly was held and no actual expenses for mileage were incurred.

Plaintiff states that he had reason to believe that unless restrained the Auditor will pay the members of the General Assembly allowance aggregating $21,000.00 for such mileage. Temporary restraining order was allowed as prayed for.

The plaintiff elaborates the allegations of the original petition in an amended petition in which new defendants are made being the president of the Ohio Senate, the Speaker of the Ohio House of Representatives together with the Clerks of each House. It is alleged that on the 2nd day of July, 1936, the General Assembly voted to take a five minute recess, and thereupon disbanded to their respective homes; that on the 8th day of December, 1936, said General Assembly returned to the city of Columbus and convened in actual legislative session, not having convened in actual session between July 26 and December 8th, and that in the interval there was no actual session of the General Assembly on account of which any member would have been entitled to mileage paid from the treasury; that when the Assembly

met in actual session December 8th its members by motion adopted in each branch, each provided that the body adjourn as of July 22nd, and that entries be made in the journal of both the Senate and the House to show the convening of each House twice a week from that date until December 8, 1936; that such entries were incorporated in the respective journals so that it would appear that forty sessions had been held when in truth no such sessions had been held. Thereafter the respective clerks of each House certified to the Auditor of State mileage allowances authorizing payments for mileage not incurred and for mileage to and from said forty purported sessions which did not occur; that the amount certified on account of the members of the house was $21,507.00 and on account of the members of the Senate $5,557.00; that the payment for members of the Senate had been made before the final adjournment of the General Assembly, and contrary to the provisions of §50, GC. Plaintiff says that payments to the members of the House will be made unless enjoined by the order of the court; that they are illegal and a fraudulent diversion of public funds, and that he is without adequate relief unless the defendant Tracy be restrained from paying the members of the House and be ordered to recover back the amount he has paid to the Senate for the period from July 22nd to December 8th, 1936.

Plaintiff prays that the court grant a temporary restraining order enjoining the Auditor from issuing vouchers in payment of $21,507.00 mileage claimed for the members of the House, and the court issue a mandatory injunction compelling the defendants to collect the amount illegally paid to the members of the Senate. In the alternative plaintiff asks that §50, GC, providing for mileage be declared unconstitutional as violative of **Art. II, Sec. 3 of the Constitution.** Plaintiff makes appropriate prayers as to the clerks of each House.

J. Freer Bittinger, Speaker of the House, and defendant, files an answer and cross-petition stating that he be-

lives that the question involved is of common interest to a large number of members. Defendant says pursuant to the usage and custom of the House of Representatives extending over a great number of years and in pursuance of the opinion of the Attorney General dated January 18, 1916 the House of Representatives of the 91st General Assembly, did on the 8th day of January provide by resolution for the appointment of a committee to adjust the mileage of the members, and thereafter on the 18th day of February, 1935, the report was submitted and entered in the journal in part that the committee finds the mileage of the members from place of residence to the seat of government to be as reported. After this recital said report lists the names of all members and opposite each name, a figure representing the mileage; that in accordance with the usage of the House a copy of the journal was certified to the Auditor and that pursuant to such usage no further certification of mileage has ever been made by the House of the General Assembly and that according to usage the ascertainment of the amount of money due to each has been a matter of mathematical computation.

On February 24, 1935, Fred El Sasso, Speaker of the House, filed an answer of like import.

Further answering the amended petition in the capacity of a representative of each member the defendant admits that on the 22nd of July, 1936, the General Assembly was in session at Columbus; and denies that on said date the Assembly voted to take a five minute recess, but avers that the House of Representatives, acting separately, on motion did on said date recess for five minutes as appears on the recorded journal for that day and on the printed journal thereafter; that as further appears on said recorded and printed journals the House of Representatives met pursuant to recess at 2:15 P. M. and transacted certain business and that thereafter on motion and acting separately the House of Representatives recessed subject to the call of the Chair and that subsequently as appears on the recorded journal said House met pursuant to recess and thereafter it adjourned until Saturday. July 25, 1936, and that according to the recorded and printed journal said Senate met on July 22nd and after transacting certain business recessed for five minutes subject to the call of the Chair. and then on motion adjourned until Saturday, July 25th.

The defendant admits that on the 8th day of December the Assembly was in session, each House having met pursuant to their respective adjournments; that as regards the allegation of the petition to the effect that on said date by a certain motion adopted in each branch, provided that the body adjourn as of July 22, 1936, and that entries be made in the journal of both Houses to show the convening in session of each House twice a week from that date until December 8, 1936. The defendant says that neither the recorded nor printed journal of December 8, 1936, or any other date of either the House or Senate showed the adoption in either branch of any such motion or any motion having that effect. The defendant admits that the recorded printed journals do show that the House of Representatives met at least twice each week between July 22, 1936, and December 8, 1936.

The defendant denies certain other allegations in reference to mileage; that defendant, neither in his capacity as representing members of the House, nor as Speaker of the House is authorized to contradict or add to recitals of the printed journal which are the act of the whole House, for which reason defendant neither admits nor denies any of the affirmative or negative allegations of the petition.

Defendant says that prior to the 18th day of September, 1935, the regular session of the Assembly had adjourned and that on said date pursuant to the proclamation of the Governor the said Assembly convened in a special session since which day each of the two Houses had separately repeatedly adjourned from day to day. but not for more than two days at any one time, as provided by Article II, Section 14,

and that said General Assembly did not, between the 18th day of September, 1935, and the 28th day of December, 1936, adjourn as a General Assembly by the concurrent action of both Houses either to a day certain or without day; that the Assembly adjourned the special session on December 28, 1936, so that the special session commencing on the 18th day of September, 1935, continued thereafter as a special session until the same was terminated on the 28th day of December, 1936, all of which appears in the record; that in the time between July 22, 1936, and December 8, 1936, the Journal of the House showed that the House met from time to time pursuant to adjournment and adjourned without consent of the Senate to a day certain, in each case being not more than two days; that the journal shows two or more meetings of the House in the city of Columbus in each week within the interval referred to in the amended petition, beginning on July 26, 1936, and ending on November 29, 1936, being an aggregate of 19 weeks; that the journal of the Senate shows like action; that the mileage of the members of the House would be computed on the basis of once a week for each of said 19 weeks and not on the basis of 40 sessions of the General Assembly as erroneously stated in the petition.

Defendant prays that the amended petition so far as it pertains to the mileage of the members of the House be dismissed.

As a cross-petition the defendant alleges that it appears from the pleadings that certain questions exist as to the validity of §50, GC, in five particulars therein set out and as construed, and the defendant claims that said section is valid when so construed. It is alleged that a controversy exists in reference to the construction of said section and that a judgment would terminate the controversy and that said questions are of public and general interest; that the said interpretation of said section for a great many years should now be determined in the interests of the Assembly and of the people.

The defendant prays for a decree determining the questions.

Later, proper parties were substituted for the original parties. Many motions were interposed with supporting briefs. A motion of the plaintiff to strike from the files the cross-petition of the defendant in which a declaratory judgment is sought was overruled.

Arnett Harbage, the plaintiff below, filed an answer to the cross-petition of the defendant Bittinger denying certain matters in reference to the allegations made touching the meaning of §50, GC. Harbage asks that for the purpose of determining the rights of a member to mileage for a given week under §50 the true facts may be shown and that the recitals in the journal are not conclusive of the facts therein recited; that §50 as construed by the cross-petitioner is invalid and unconstitutional in that it would result in a conflict between Sec. 5 and Art. XII, Sec. 31 of the Constitution, which provides that the members and officers shall receive a fixed compensation, and that no other allowance or perquisites either in the payment of postage or otherwise and no change in their compensation shall take effect during their term of office. Plaintiff admits that the compensation for mileage is affected by §50 and that a controversy exists. He denies that the interpretation of the cross-petitioner has been settled but admits that the meaning of the section should be determined. Plaintiff prays for decree of determination of the questions raised by the cross-petition and declaring the meaning of §50, the duties of the members, the rights of taxpayers and prays that the Court decree that the members of the House are not entitled to receive mileage once a week for each of the 19 weeks commencing with July 26th and ending November 19, 1936, since no sessions of the General Assembly were actually held during this period, and therefore no mileage compensation is provided by the section. Numerous hearings were had and decisions rendered by the court on preliminary matters touching the pleadings.

Joseph T. Ferguson, Auditor of State, for answer states that the court has no jurisdiction to issue a mandatory injunction to compel him to collect the fees alleged to have been paid by his predecessor.

On February 6th, 1939, the court upon hearing upon the plaintiff's petition and the answer and cross-petition of Bittinger and plaintiff's answer, etc., finds that on the 22nd of July, 1936, the 91st General Assembly of Ohio was in session; that on said date each House separately voted to take a five minute recess and thereupon disbanded to their respective homes; that on the 8th day of December said members returned and each House convened in actual legislative session; that neither House convened in actual session between July 22, 1936, and December 8th, and that in said interval there was no actual session or actual meeting of the General Assembly on account of which any member would have been entitled to any mileage from the treasury of the state; that entries were made in the journals of each House to show the convening of each House twice or more a week, from July 22, 1936, to December 8, 1936; that such entries were in fact incorporated in the House and Senate journals so that it would appear that forty sessions of each House of the General Assembly had been held when in truth and in fact no such sessions had been held; that thereafter the clerk of the House and president of the Senate certified to the Auditor mileage allowances for the members of the House and Senate authorizing payment of mileage not incurred and for mileage for each of the sixteen weeks within which forty fictitious sessions were purported to have been held which did not in fact occur, and that the amount of payments vouched on account of the members of the House was $21,430.32, which has been appropriated to and is now in the fund known as traveling expenses; that $5363.09 for mileage for the members of the Senate have in fact been paid and were paid before the final adjournment of the General Assembly, contrary to §50, GC; that the threatened payments to the members of the House and further payments to the members of the Senate would be and are legally a fraudulent perversion of public funds, and that by reason of the premises plaintiff is without adequate relief.

It is ordered and decreed that Ferguson, the defendant, and his successor in office as Auditor of the State be permanently enjoined from issing vouchers for the members of the House of Representatives for so-called sessions which were never actually held from July 22, 1936, to December 8, 1936, and it is ordered that mandamus issue to the defendant ordering them to collect the $5363.09 illegally paid to members of the Senate.

The Court finds as to counsel fees that the plaintiff Arnett Harbage, through his counsel, Agnes B. Dickinson and Gilbert Bettman, has prosecuted the action to final conclusion; that the action has been brought as a taxpayer and has resulted in a saving to the taxpayers in the sum of $21,430.32 and a prospective saving of $5360.09, also a future saving of many thousands of dollars, all resulting from the decision of the court terminating the practice of the members of the Legislature of providing for payment of mileage for fictitious sessions. The court finds that had it not been for the efforts of the plaintiff and counsel, there would have been lost such sums as would have been paid to the members of the House, and that so much as is recovered to the members of the Senate will be a saving and that the efforts of the plaintiff and his counsel have tended to preserve the funds of the treasurer; that their activities have been of benefit to all the taxpayers in the state; that the services have been performed to preserve a common fund and that by reason thereof counsel are entitled to the payment of fees in an amount commensurate with their achievements; that it is in accordance with sound public policy to reimburse persons bringing such actions and that such fees will be just and equitable. but that in spite of the foregoing facts the effect of **Article II, Section 22 of the Consti-**

tution is that no payments can be made out of the treasury unless the sums shall have been specifically appropriated by an act of the Legislature and that for this reason alone the Court denies the fees.

On February 17, 1939, the Auditor of State gave notice of appeal to this court on the question of law and fact.

There seems to be little or no question as to the facts in this case and the pleadings which we have above epitomized are quite sufficient to obviate the necessity of a reiteration of the questions involved. Counsel for defendants while objecting to the introduction of any evidence that might contradict the record has stipulated in the short record of testimony taken in the court below to the fact that if a witness, Mr. Christy, were personally present he would testify that no meeting nor sessions were held between July 22, 1936, and December 8, 1936, and that no votes to convene nor to adjourn as are purported to be set forth on the journal of the House were in fact taken on said dates indicated on the journal, and that no actual sessions were held. It also appears that in the testimony of Overton B. Jackson, a member of the Senate, the following question and answer were given:

"Q. Will you state whether or not there were any actual sessions held of the General Assembly and the Senate branch in the period from July 22, 1936, to December 8, 1936? A. To the best of my recollection, Mr. Bettman, there were no sessions held from July 22, 1936, to December 8, 1936."

There was no other testimony upon the point. So we may proceed on the assumption that there was no actual session of either branch of the Legislature between the dates mentioned and that the journals of both Houses were afterwards made up to show that such sessions were held.

The Court below found as already appears from the final entry, that on July 22, 1936, each House separately voted to take a five minute recess, and thereupon disbanded to their respective homes, and that on the 8th day of December they returned and each House convened in actual legislative session; that neither House convened between July 22 and December 8th and that during such period there was no actual meeting of the Assembly, and that entries were made in the journal of each House to show the convening of each House twice or more per week between said dates, and that such entries were incorporated so that it would appear that forty sessions had been held. The court below found that no such sessions had been held and that the clerks of each House certified to the Auditor mileage allowance which would authorize the payment of mileage not incurred for sixteen weeks within which forty fictitious sessions were purported to have been held which did not in fact occur.

Counsel for the defendant takes the position that the journal of the respective Houses may not be impeached to show that the facts recited did not as a matter of fact occur. Counsel in his brief states in substance that in spite of the opinion of the Court of Common Pleas, the rule as to the unimpeachability of legislative journals is of universal application; that it is a positive rule and constitutional law resulting from the doctrine of the separation of the power of government which precludes the interference by the judiciary with any of the acts and proceedings of either House of the Legislature, in this instance, the keeping of the journal which is an act of the whole House and that any distinction sought to be shown between "legislative acts" and "ministerial acts" does not in fact exist.

We cannot support counsel in this claim. If entries have been made in the journal of each House in compliance with a long established custom, which entries do not in fact tell the truth in reference to the matter here in question, but show that there were forty legislative sessions between July 22 and December 8, which did not as a matter of fact occur, we are of the

opinion that such a manifest misstatement of facts can not be shielded from scrutiny which would develop the truth by the claim that the journals of the two Houses may not be impeached. We have considered the cases in which this proposition has been sustained and we find none in which such palpable misrepresentation has been journalized, which have been protected by the court, on either the theory that the journal could not be impeached or that the judicial branch could not interfere with the legislative branch of the government.

## May Mileage Be Allowed Even Though There Was No Session?

Whether or not mileage may be allowed even though the Legislature was not in session presents a more serious question. It is asserted by counsel for defendant that the statutes relative to salary and mileage have been construed for many years on the theory of compensation and not on the theory of reimbursement. It is also pointed out that attendance at full meetings of either House constitute but a part of the services exacted of a legislator and that the court will take judicial notice of the fact that services on committees and contact with constituents take up more of the legislator's time than is spent in actual meetings, and that while the evidence offered is calculated to show that there was no meeting of the Houses during the interval, there is no proof to indicate that some or all of the members were not engaged in Columbus or elsewhere during that interval in the performance of other duties of a legislative nature.

We do not think it is necessary to discuss the question as to whether or not a member of the legislature would be entitled to mileage if he were attending committee meetings incident to his duties as a legislator. These services would be incident to his position, but we must confine ourselves to the statutes to determine for what services he is to be compensated. As to the possibility that all members of the Legislature were actually in Columbus en-

gaging in meetings of committees, such an assertion is not supported in any way and cannot be given serious consideration. Could it be shown to be a fact there might be some basis for compensation although upon this point we do not pass.

In order that we may correctly understand the situation we shall first consider **Art. II, Sec. 31 of the Constitution.** It provides:

"The members and officers of the General Assembly shall receive a fixed compensation to be prescribed by law and no other allowance of perquisite, either in the payment of postage or otherwise; and no change in their compensation shall take effect during their term of office."

The claimed service in this case being made at a special session of the Legislature we consider for the moment **Article III, Section 8,** which provides that the Governor may call by proclamation a special session to transact designated business * * * , "but the General Assembly may provide for the expenses of the session and other matters incidental thereto." The effect of this latter constitutional provision is discussed in an interesting manner in **State, ex rel v Tracy, 128 Oh St 242,** wherein it is held that the section and article referred to affords no constitutional authority for an act which made an appropriation for paying expenses incurred by the members in attending special sessions. During the discussion of the case Judge Stevenson had occasion to say,

"The General Assembly has full power to fix compensation for its members, but it must be a fixed compensation, not an ephemeral one, **but no change in their compensation shall take effect during their term of office."**

The case does not bear sufficiently upon the question here before us to justify further quotation.

### THE STATUTES.

The discussion centers around §§50

to 56, GC. §50 provides (emphasis ours):

"Every member of the general assembly shall receive as compensation a salary of two thousand dollars a year during his term of office. Such salary for such term shall be paid in the following manner: **two hundred and fifty dollars in monthly installments** during the first **session** of such term and the balance in equal monthly installments during the remainder of such term.

"Each member shall receive the legal rate of railroad transportation each way for mileage once a week during the session from and to his place of residence, by the most direct route of public travel to and from the seat of government, to be paid at the end of each regular or special session."

### Sec. 54, GC, is as follows:

"The president of the Senate, speaker of the House of Representatives shall ascertain the number of **days attendance** of each member and officer of the respective houses, **during the session,** the number of miles traveled of each member to and from the seat of government and certify such attendance and mileage and the amount due thereon to the auditor of state."

In common practice this mileage is once ascertained and certified to the auditor who then issues his voucher for the amount due based on the sessions, there being no attempt to ascertain the number of days attendance of each member during such period. A matter which has not been commented upon is that Section 31 of Article II covers not only the salary of the members but of the **officers** of the Assembly and §54 relates not only to the members but to the officers. This matter is of interest because of the fact that §51 provides for the compensation of clerks, and that "during service all shall receive the actual fare per mile each way for mileage twice a month from and to their place of residence by the most direct route of public travel, the same to be paid monthly."

Sec. 52 defines the word "attendance" as follows:

"The word 'attendance' includes all days from the opening to the closing of the session, except such days of absence as are not excused by the House to which the **member** or officer belongs."

It is urged by counsel for defendant that these several statutes provide not only for the annual compensation in a fixed sum of $2000.00, but that the compensation in addition to this $2000.00 consists of certain stated amounts to be paid by the computation of mileage depending upon the distance of the legislator from Columbus, and that it is of no consequence whether the member of the Legislature travels the distance "once a week", but that he is entitled to the mileage once a week during the session, and that the session covers the period of time from its beginning until its final adjournment and that there was no such adjournment during the period in question. It might be noted in passing that the mileage compensation is based upon "the legal rate of railroad transportation each way for mileage once a week." It is not based upon any fixed amount per mile but the measure of the payment is the legal rate of railroad transportation. It is claimed on behalf of the plaintiff that if this argument that the mileage is a part of the compensation that it is in direct conflict with Section 31 of Article II by which the member is to receive a **fixed** compensation and no other allowance or perquisites. It is argued that if the mileage is really a part of the compensation that the legislators will each receive a different compensation, those living in the city of Columbus having no extra compensation and those living in other parts of the state having a compensation dependent upon the mileage that must be traveled, and therefore that they would not each receive a fixed compensation. We are inclined to the opinion that the compensation for mileage is to cover the expenses of the member as he travels back and forth; that it is not a

fixed compensation, but is simply expense money dependent upon the distance traveled. We do not wish to say that if a legislator does not return to his home during any one week that he is thereby deprived of the expense money of railroad transportation, and of course he does not have to travel the railroad, the railroad provision being simply the measure of the payment for the mileage.

· The court below has given us a most interesting history of the various enactments during a course of years in relation to mileage. We agree with the court that none of the provisions seems to contemplate the payment of mileage as a part of the compensation irrespective of whether the legislature is in session or not. Taking the broad view of the Constitution and the statutes, we are of the opinion, first, that the journals of the two houses do not import absolute verity, and that the rule that they may not be impeached has no reference to the matter now in controversy; 2nd, that the members of the Legislature are not entitled to mileage unless the Legislature be in actual session during the time for which the mileage is paid. We have been much impressed by the most excellent opinion of the court below and adhere to the conclusion of the several Judges of the lower court who have separately passed upon this question, each arrived at the same conclusion.

We therefore arrive at the conclusion that the judgment of the court below should be affirmed.

Another matter that is brought before us on a cross appeal is the question of allowing compensation to the plaintiff and to attorneys for the services rendered which are of benefit to the State. This matter was considered very carefully by the court below, and while the court was there of the opinion that the services rendered were worthy of compensation, that due to the inhibition of **Sec. 22, Art. II**, to the effect that no money shall be drawn from the treasury except in pursuance of a specific appropriation made by law, that no compensation for the services, although justly deserved, could be made, except as provided by that section of the Constitution.

We have had occasion to examine this question in the case of **State, ex Yontz v West, Registrar of Motor Vehicles**, No. 2949 (Franklin County), decided February 27, 1939; 29 Abs 419. In the case at bar the money is not in the state treasury but is in a travel fund of the several houses. In the Yontz case we held that **Art. II, Sec. 22 of the Constitution** does not apply to a fund which had arisen from the sale of automobile license tags but had not yet reached the state treasury. It may be possible that a distinction may be made in this case in that the fund has been appropriated for the purpose of paying mileage, and that while it is not in the state treasury it has been definitely appropriated to some purpose. However, our conclusion on this is that so long as the plaintiff's activities saved the fund from being disbursed on account of mileage where none is due, that the same principles announced in the Yontz case would apply to this. In that case we had occasion to examine the following cases: **State, ex rel v Braden, 125 Oh St 307; Fisher Bros. v Brown, Secy. of State, 111 Oh St 602, at page 624; Bedford v State, 123 Oh St 413.**

## No. 3031.

Case No. 3031 is a companion case to No. 3027. The matter there in controversy was whether or not the Auditor of State could be ordered to recover back mileage amounting to $5557.00 paid to the members of the Senate before the institution of this proceeding. The court below holds that such an order is authorized by §270, GC, which specifically enjoins upon the State Auditor the recovery of money that has been illegally issued by the Auditor. The Court held that the duty is clearly imposed upon the Auditor to recover the money, and that the undisputed facts show

444

that the money was illegally or improperly issued and that the only remedy is to order the Auditor to perform his duty as prescribed by law, and it was ordered that a writ be issued commanding the Auditor to cause the money illegally paid to the members of the Senate to be collected. In this order we think the court below is correct.

The judgment of the court below in both Nos. 3027 and 3031 is affirmed, except as to the refusal of the Court to fix attorneys' fees, which is reversed and we remand No. 3027 back to the court below for the purpose of fixing the amount of the attorneys' fees.

HORNBECK, PJ, concurs in judgment of affirmance; BARNES, J, concurs.